**Shirley INFANTE, Plaintiff,**

v.

**BRIDGESTONE/FIRESTONE, INC. and Firestone Tire and Service Center, Defendants.**

No. 1:97–CV–259.

United States District Court, E.D. Texas, Beaumont Division.

May 28, 1998.

Jonathan Charles Juhan, Grossman & Waldman LLP, Beaumont, TX, for Plaintiff.

Shirley Infante, Beaumont, TX, pro se.

John W. Newton, III, Orgain Bell & Tucker, Beaumont, TX, for Defendants.

*ORDER GRANTING DEFENDANTS' MOTION TO ENFORCE SETTLEMENT AGREEMENT, AND DISMISSING CASE WITH PREJUDICE*

SCHELL, Chief Judge.

Before the court is Defendants' Motion to Enforce Settlement Agreement, filed on February 9, 1998. At a hearing held on April 6, 1998, the court gave Defendants more time to brief the motion, and Defendants filed a Brief in Support of Defendants' Motion to Enforce Settlement Agreement on April 17, 1998. As will be discussed below, Plaintiff Shirley Infante ("Infante") filed no response to Defendants' Motion.

## I. BACKGROUND

Defendants argue in their motion that on December 15, 1997, the parties, through their attorneys, reached a settlement agreement in the above-styled case.[1] At a case management conference on January 5, 1998, defense counsel informed the court that the case had settled. Plaintiffs' counsel, Jonathan Juhan ("Juhan"), of the law firm Grossman & Waldman, L.L.P. did not attend the conference in person, but he did confirm the settlement of this case via a telephone conversation with court personnel. At that hearing on January 5, 1998, the court was satisfied that each attorney was representing to the court that the case had settled, and the terms of the settlement agreement were read into the record in open court. The court ordered closing papers to be submitted by January 19, 1998.

## II. THE PRESENT MOTION

Defendants filed the present Motion to Enforce Settlement Agreement on February 9, 1998, claiming that Plaintiff never signed the Full and Final Release agreed to by the parties,[2] and that the case never finally settled. The court ordered a hearing on April 6, 1998, to determine the cause for the delay. At the hearing, testimony entered into the record shows that before the settlement agreement could be signed, a dispute arose between Ms. Infante and her counsel, Mr. Juhan. The dispute apparently centered around Juhan's representation of Ms. Infante, and the disposition of the present case. The dispute caused Ms. Infante to file a grievance against Juhan. Because of the ongoing dispute between Ms. Infante and Juhan, the court granted Juhan's Motion to Withdraw as Counsel for Ms. Infante.

At that time, on April 6, 1998, Ms. Infante was told by the court that Defendants had filed a motion asking the court to enforce the terms of the settlement. She was told that Defendants were being given some extra time to research their motion. She was also told by the court that she needed to try and retain new counsel, and that when she retained new counsel, she was to immediately call the court and disclose the identity of her

---

1. The terms of the settlement agreement are recited in Defendants' Motion to Enforce Settlement Agreement at 1, and in the Brief in Support of Defendants' Motion to Enforce Settlement Agreement at 1.

2. A copy of the Full and Final Release proposed by Defendants is attached to their Brief in Support of Defendants' Motion to Enforce Settlement Agreement.

new counsel. The court ruled that it would grant Ms. Infante time to respond to Defendants' Brief, and that her response would be due by April 24, 1998. Ms. Infante indicated at that time that she understood the situation, and the court's advisories to her.

As of the date of this Order, Ms. Infante has not informed the court of the identity of her new counsel, if any has been employed. Nor has she or anyone on her behalf filed a response to Defendants' Motion. Since the time has passed for Plaintiff to file a response, Defendants' Motion is now ripe for adjudication. E.D. TEX. LOCAL R. CV–7(d).

### III. ANALYSIS

#### A. The Enforceability of a Settlement Agreement under Texas law

Jurisdiction in this case is based on diversity of citizenship under 28 U.S.C. § 1332. Since this is a diversity case, the issue of the enforceability of the settlement agreement is governed by Texas law. *Vasquez v. Alto Bonito Gravel Plant Corp.*, 56 F.3d 689, 693 (5th Cir.1995); *Oliver v. The Kroger Co.*, 872 F.Supp. 1545, 1547 (N.D.Tex.1994). Rule 11 of the Texas Rules of Civil Procedure governs the enforceability of settlement agreements under Texas law. It states that once a settlement agreement is read into the record in open court, it becomes enforceable. TEX. R. CIV. P. 11. "Assuming a settlement meets the requirements of Rule 11 and is an enforceable contract, it can be enforced ... In addition, ... federal courts have the inherent power to enforce settlement agreements entered into by the parties ... in a pending case." *In re Omni Video, Inc.*, 60 F.3d 230, 232 (5th Cir.1995) (citations and internal quotations omitted).

Defendants have filed several letters regarding the settlement. These letters, copies of which were sent to Juhan, indicate that Defendants believed a settlement was reached on December 15, 1997. Further, both Defendants' counsel and Juhan indicated through their representations to the court on January 5, 1998, that a settlement was reached in the case on December 15, 1997. Finally, the testimony and representations of both Defendants' counsel and Juhan at the

hearing on April 6, 1998, indicate that a settlement was reached on December 15, 1998, that Ms. Infante agreed to the settlement through her attorney, and that her attorney had authorization to make the settlement enforceable by having it read into the record on January 5, 1998.

■ On January 5, 1998, defense counsel announced in open court that the parties had reached a settlement. Plaintiff's counsel confirmed the settlement with a telephone call. Defense counsel then read the terms of the settlement into the record. This formal announcement met the requirements of Rule 11 and created an enforceable, binding agreement. Thus, there is an enforceable contract between the litigants under Rule 11.

#### B. Agency Principles in Binding Plaintiff to the Settlement Agreement

■ A litigant is bound by the authorized actions of her representative. *Amin v. Merit Systems Protection Bd.*, 951 F.2d 1247, 1254 (Fed.Cir.1991) (citations omitted). An attorney retained for litigation is presumed to possess express authority to enter into a settlement agreement on behalf of the client. *Id.* The client bears the burden of rebutting this presumption with clear evidence that the attorney lacked settlement authority. *Id.; see also Walden v. Sanger*, 250 S.W.2d 312, 316 (Tex.Civ.App.—Austin 1952, no writ). There is no evidence that indicates that at the time the settlement was reached on December 15, 1997, or at the time that the settlement was read into the record on January 5, 1998, Ms. Infante had withdrawn Juhan's authority to settle her case. *Cf. Walden*, 250 S.W.2d at 316–17 (where a court has actual notice that a plaintiff is unhappy with the settlement, then the settlement should not be finalized).

At the hearing on April 6, 1998, Juhan testified that settlement terms had been agreed to by Ms. Infante and Defendants in December, 1997. He stated that Ms. Infante later refused to sign the Full and Final Release. At the hearing, Ms. Infante disputed Juhan's account, and gave testimony under oath that was somewhat contradictory. Ms. Infante stated both (1) that she never gave Juhan authority to settle on the terms to

which he had agreed, and (2) that she had accepted the settlement at first, but later revoked her acceptance. She could not remember the specific date on which she purportedly revoked the settlement, and provided no other evidence of a revocation.

Based upon the entire record in this case, the court finds that Ms. Infante has failed to produce sufficient affirmative evidence that Juhan had no authorization on December 15, 1997, when he agreed to the settlement on her behalf. Ms. Infante has also failed to produce sufficient affirmative evidence that she revoked Juhan's authority prior to the settlement being read into the record on January 5, 1998.

The court finds that the parties, by and through counsel, John W. Newton, for Defendants, and Jonathan Juhan, for Plaintiff, agreed to settlement terms on December 15, 1997. The settlement was read into the record on January 5, 1998. The act of reading the settlement into the record made the agreement enforceable under TEX. R. CIV. P. 11. *Oliver*, 872 F.Supp. at 1548. Moreover, there is no evidence that an exception to Rule 11 should apply in this case. *See id.* at 1549 (narrow exceptions to Rule 11 exist, but evidence supporting an exception must be presented to the court).

### C. The Issue of Revocation

The court has concluded that Juhan had authority to settle the case for Ms. Infante, that the case was settled, and that the settlement was read into the record, thereby making it enforceable under Rule 11. At the hearing on April 6, however, Ms. Infante voiced her objection to the settlement and made it clear that she wished to revoke any settlement that was reached.

Texas courts have recognized that if a settlement agreement is revoked prior to final judgment, then the settlement agreement is no longer enforceable as a consent judgment. *S & A Restaurant Corp. v. Leal*, 892 S.W.2d 855, 857 (Tex.1995); *Golodetz Trading Corp. v. Curland*, 886 S.W.2d 503, 504 (Tex.App.—Houston [1st Dist.], no writ). A party may revoke its consent to a settlement agreement at any time before judgment

is rendered on the agreement. *S & A Restaurant*, 892 S.W.2d at 857.

The rules regarding revocation, however, do not apply in this case. The requirements for an agreed judgment are not to be confused with the requirements for an enforceable settlement agreement. *Padilla v. LaFrance*, 907 S.W.2d 454, 461 (Tex.1995). As stated in *Padilla:*

> Although a court cannot render a valid agreed judgment absent consent at the time it is rendered, this does not preclude the court, after proper notice and hearing, from enforcing a settlement agreement complying with Rule 11 even though one side no longer consents to the settlement. The judgment in the latter case is not an agreed judgment, but rather is a judgment enforcing a binding contract.

*Id.* (citations omitted). The *Padilla* court noted that a court cannot enter an *agreed* judgment when it is aware that a party has revoked consent to a settlement agreement. However, the court can enter judgment enforcing a settlement agreement where the agreement has been sufficiently proved. *Id.* at 462.

As shown above, Defendants have established an enforceable settlement agreement as a matter of law. Further, Defendants have discharged their duties under the settlement agreement by delivering a check to Grossman & Waldman, L.L.P., which acted as Ms. Infante's agent in this matter. Any dispute between Ms. Infante and Mr. Juhan or his firm, Grossman & Waldman, L.L.P., regarding the settlement funds in the possession of Grossman & Waldman, or regarding the representation of Ms. Infante, is not a part of this case. Those issues are a matter of dispute between Infante and her lawyers, not between Infante and Defendants.

### IV. CONCLUSION

THEREFORE, for the foregoing reasons, the court ORDERS that Defendants' Motion to Enforce Settlement Agreement is hereby GRANTED. Defendants have represented to the court that they have delivered a check to Grossman & Waldman, L.L.P., to be held in trust on behalf of Ms. Infante. Therefore,

they have fulfilled their obligations under the settlement agreement. Based on Defendants' representation that the settlement funds were delivered to Grossman & Waldman, L.L.P., this case is hereby DISMISSED WITH PREJUDICE.